UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES E. ARNEY,  No. 04-60183

       Petitioner, District Judge Marianne O. Battani

v. Magistrate Judge R. Steven Whalen

MR. LUOMA, WARDEN

       Respondent.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Petitioner James Edward Arney's Petition for Writ of Habeas Corpus filed under 28 U.S.C. §2254, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that the Petition be DENIED.

**I.   PROCEDURAL HISTORY**

Petitioner was convicted by a jury in the Macomb County, Michigan Circuit Court, the Honorable Mary Chrzanowski, presiding, of Armed Robbery, M.C.L. §750.529. He was originally sentenced to 15 to 50 years imprisonment. He took an appeal by right to the Michigan Court of Appeals, raising the following issues:

  I.  THE SENTENCING GUIDELINES WERE MISCALCULATED AND COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE INCORRECT CALCULATION.

 II.  DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE

OF COUNSEL ON TRIAL UNDER THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND UNDER SECTION 20, ARTICLE 1, MICHIGAN CONSTITUTION 1963 WHEN HIS TRIAL COUNSEL FAILED AND OMITTED TO SEEK AN EVIDENTIARY HEARING PRIOR TO TRIAL TO CHALLENGE THE WITNESSES' IDENTIFICATIONS OF DEFENDANT.

III. DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT TO THE USE BY THE PROSECUTOR OF THE PHRASE 'MUG SHOT' WHEN REFERRING TO THE PHOTO OF MR. ARNEY USED IN THE PHOTO LINEUP, THEREBY IMPROPERLY DISCLOSING APPELLANT'S PRIOR UNRELATED CONTACT WITH THE POLICE TO THE JURY.

IV. DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL COURT PERMITTED THE JURY TO BE INFLUENCED BY FACTORS EXTERNAL TO THE PROOFS ADDUCED AT TRIAL.

As part of the appellate proceedings, and prior to the Court of Appeals decision, a motion for new trial and evidentiary hearing was held in the trial court on the issue of ineffective assistance of counsel. On September 27, 2002, the trial judge denied the motion for new trial in a written Opinion and Order.

On March 20, 2003, the Court of Appeals affirmed Petitioner's conviction, but remanded to the trial court for resentencing, based on the first issued set forth above. Petitioner was resentenced to 80 months (6 2/3 years) to 35 years, with credit for 1,263 days.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising issues II, III and IV, above. On August 29, 2003, the Michigan Supreme Court denied leave to appeal.

Petitioner filed a timely Petition for Writ of Habeas Corpus in this case, raising the following issues:

I. PETITIONER ARNEY WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION; WHERE, TRIAL COUNSEL MISUNDERSTOOD THE APPLICABLE LAW AND OMITTED SEEKING AN EVIDENTIARY HEARING PRIOR TO TRIAL REGARDING THE WITNESSES' IDENTIFICATION OF PETITIONER.

II. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT TO THE PROSECUTOR'S USE OF THE PHRASE "MUG SHOT" WHEN REFERRING TO THE PHOTO OF MR. ARNEY USED IN THE PHOTO LINE-UP THAT IRREPARABLY PREJUDICED PETITIONER BY DISCLOSING TO THE JURY HIS PRIOR UNRELATED CONTACT WITH THE POLICE.

III. PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS WERE VIOLATED WHEN THE TRIAL COURT ABUSED ITS DISCRETION AND PERMITTED FACTORS EXTERNAL TO THE PROOFS ADDUCED AT TRIAL TO INFLUENCE THE JURY.

## II. FACTS

The charge against Petitioner arose out of an armed robbery that occurred at the China Palace Restaurant in Warren, Michigan on November 23, 1999. Patricia Hom, who owned the restaurant with her husband, testified that as a male customer was purporting to pay for a carry-out order, he told her that he had a gun, and demanded that she "give [him] the money." (Tr. 7-31-01, 179). She described this person as a white male in his 30's, approximately 5'10" and well over 200 pounds, with facial hair (Tr. 7-31-01, 184, 209, 215). Mrs. Hom, being terrified by what was happening, was unable to comply with all of the robber's demands, and at one point mistakenly closed the cash register drawer (Tr. 7-31-01, 182-83). In any event, while the drawer was open, the person reached over the counter and grabbed cash from the register (Tr. 7-31-01, 182). Mrs. Hom testified that the robber stared

at her, and that she looked at his face (Tr. 7-31-01, 186). She said that the robber left the restaurant, but when he was outside, he turned and looked back through the glass door of the restaurant (Tr. 7-31-01, 186).

In court, Mrs. Hom identified the Petitioner as "looking very much like" the person who robbed her, but said that he was much thinner now. However, she said that his eyes looked the same (Tr. 7-31-01, 188-190). When asked by the judge whether the Petitioner *was* the person who robbed her, she said, "I cannot say for sure." (Tr. 7-31-01, 190). She also testified that shortly after the robbery she had identified the Petitioner's photograph, stating that she was "90 percent sure" that it was the person who robbed her (Tr. 7-31-01, 193-94).

Jie Li was working as a waitress on the night in question, and prior to the robbery she spoke to and made change for the suspect (Tr. 8–1-01, 5-7). Later, when she heard Mrs. Hom shouting "rob" in Chinese, Ms. Li came to the lobby area where she saw this same person leaning on the cash register, with a black gun in his hand. She ran to the kitchen and called the police (Tr. 8-1-01, 7-12).

During the course of the investigation, the police learned that three other customers were present in the restaurant before the robbery, around the time the suspect was present and ostensibly waiting for a carry-out order. These witnesses, Joseph Burge, Melissa Malin, and Stacey Luckenbacher, all testified at trial. All three viewed photographic displays assembled by the officer in charge, Detective Pierog. Based on his investigation and conversations with other police personnel in the area, Det. Pierog thought he had three

possible suspects, "a guy named Porter,...a guy name[d] Gorsee, and...a guy named Arney." (Tr. 8-1-01, 171). Det. Pierog therefore put together three photo arrays, consisting of six photographs each–one suspect in each array, along with "five other people that look[ed] like the suspect." (Tr. 8-1-01, 170).

Ms. Li, the waitress, viewed the photo spreads and identified Petitioner as the customer who robbed the restaurant (Tr. 8-1-01, 174, 196-97). Mr. Burge and Ms. Malin viewed the three displays, and both identified Petitioner as the male customer they saw in the lobby prior to the robbery (Tr. 8-1-01, 27, 31, 56, 179-80). Mr. Burge and Ms. Malin likewise identified Petitioner at a live lineup conducted at defense request, and identified him in court as the robber (Tr. 8-1-01, 32, 58-59). Burge and Malin expressed confidence in their ability to recognize the Petitioner despite the fact that he had lost considerable weight and shaved by the time of trial. Both said that they could recognize Petitioner's face and eyes, and both gave positive in-court identifications (Tr. 8-1-01, 32-35, 58-59).

Following a lunch break, the jurors brought to the court's attention an incident where, while seated in a group at a local restaurant, an unknown man, approaching rapidly, spoke to Gregory Kenfield (Juror No. 205), and said "Hey, Rick Santos." When Juror Kenfield looked up, this man said, "Sorry, mistaken identity," and walked off quickly (Tr. 8-1-01, 97-98). Concerned about the possible effect of this incident on the jury's impartiality, the judge conducted an individual, sequestered voir dire of each juror. At least seven of the jurors indicated that the incident looked "odd," "strange," "suspicious," or even "staged." However, every juror said that he or she could remain fair and impartial, and that the incident

would not affect the ability to keep an open mind. (Tr. 8-1-01, 97-132). The Petitioner moved for a mistrial (Tr. 8-1-01, 132-33), which the judge denied (Tr. 8-1-01, 137). When all the jurors returned to open court, the judge instructed them as follows:

> "All right. Let me ask you collectively, ladies and gentlemen. I've asked you individually, but now I want to do it collectively. Is anybody going to have a problem of putting this incident behind and moving forward and being fair and impartial? If anybody has a problem, please let me know right now. All right. I can assure you, based upon representations from both the prosecution as well as defense, that whatever you seen and whatever you had heard today at lunch was not anything initiated by either side or promoted by either side. And I'm telling you to take and leave it behind and let's look at the facts of this case and rule on this case, based upon the facts that have been presented through the evidence." (Tr. 8-1-01, 138-39).

The jury found the Petitioner guilty of armed robbery. On August 26, 2002, in conjunction with a post-sentencing motion for new trial filed by Petitioner's appellate attorney, the court took testimony on the issue of ineffective assistance of trial counsel. The trial attorney, Ronald Goldstein, testified, as did the Petitioner and Det. Pierog. Following the hearing, the trial court issued a written opinion and order denying a new trial.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -

> a. resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> b. resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id*. In *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this Court's clearly established precedents if the state court

applies this Court's precedents to the facts in an objectively unreasonable manner."

*Williams* also made it clear that under the "unreasonable application" clause of §2254(d), it is not necessary that the controlling Supreme Court case be factually on all fours with the case under review. Instead, *Williams* held that "a state-court decision...involves an unreasonable application of this Court's precedent if the state court...unreasonably refuses to extend that principle to a new context where it should apply." *Id.*, 529 U.S. at 412.

## IV.   ANALYSIS

### A.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The Supreme Court cautioned that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. 2052 (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

The second prong of *Strickland* examines whether the defendant was prejudiced by

counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

In this case, Petitioner alleges ineffective assistance of counsel based on (1) his trial attorney's failure to pursue a motion to exclude identification testimony based on a suggestive pretrial identification procedure, pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and (2) his attorney's failure to object to the prosecution's repeated references to the term "mug shot."

### 1. Failure to Pursue Wade Hearing

At the trial court evidentiary hearing on ineffective assistance, trial counsel testified that his strategy in withdrawing the *Wade* hearing, which he discussed with the Petitioner, revolved around the theory that if the jurors were to see the inherent suggestiveness of the photographs, they would be more skeptical of the in-court identification testimony of the witnesses. ("[I]f the court did grant my motion on the Wade hearing, then we would have nothing to present to the jury to show the misidentification and the standing out of his picture as against the backgrounds of the other persons") (Tr. 8-26-02, 20). Both the trial judge and the Court of Appeals rejected the Petitioner's ineffective assistance argument based on deference to trial counsel's decisions on strategy.[1] Indeed, counsel's tactical decisions are

---

[1] The Court of Appeals also found that "[t]he totality of the circumstances does not show that the show-up or the line-up were impermissibly suggestive," and that therefore

particularly difficult to attack, *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994), and courts will not generally question matters which involve trial strategy. *United States v. Chambers,* 944 F.2d 1253, 1272 (6th Cir.1991), *cert. denied,* 502 U.S. 1112 *and* 503 U.S. 989 (1992).

Given the deferential standard of review of counsel's strategic decisions, it cannot be said that counsel's decision to abandon the *Wade* issue fell below an objective standard of reasonableness, and Petitioner has not, therefore, overcome the presumption that he received effective assistance.[2]

### 2.    Reference to Mug Shots

The Court of Appeals found that counsel was remiss in not objecting to the prosecutor's repeated references to the Petitioner's "mug shot":

> "[T]he prosecutor's pervasive use of the term [mug shot] and deliberate elicitation of this evidence at defendant's trial warranted an objection."

The problem with the use of the term "mug shot" is that it impermissibly suggests to the jury that the defendant has a record of being arrested, the popular understanding being

---

"trial counsel's decision to abandon the meritless motion" was not ineffective assistance.

[2] At the hearing on the motion for new trial, the Petitioner also argued that his attorney failed to challenge the witness's identifications based on his claim that prior to the lineup, a witness had seen him in the state district court, talking to the detective in charge.  In denying a new trial, the judge discounted the Petitioner's credibility, noting that trial counsel could not recall the Petitioner telling him about this incident, and that the detective was on a hunting vacation on the date the Petitioner claimed the incident happened. Such factual determinations are entitled to a presumption of correctness under 28 U.S.C. §2254(e)(1).

that a "mug shot" is a photograph taken by the police when someone is arrested. At the evidentiary hearing, trial counsel was apparently oblivious to this problem. *See* Tr. 8-26-02, 11-15. It appears, then, that counsel's failure to object was unreasonable, and that Petitioner has satisfied the first prong of *Strickland*.

However, the Court of Appeals found that under the second prong, there was no prejudice:

> "However, given the positive witness identification of defendant at trial, and no indication in the record that defendant was prejudiced by these remarks, we find no reasonable probability that, but for counsel's error, the result of the proceedings would have been different."

I agree. While neither the pretrial nor in-court identification of the Petitioner by Mrs. Hom was airtight (she was "ninety percent certain" when she identified the Petitioner's photograph, and not completely certain at trial), the high degree of certainty she did have was corroborated by the very positive identifications–both at trial and before–by Mr. Burge and Ms. Malin. It is unlikely that the colloquial references to "mug shots" played any significant role in the jury's verdict. Petitioner has not therefore met the second prong of *Strickland*.

### B. Jury's Exposure to Extraneous Influences

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *United States v. Shackleford*, 777 F.2d 1141, 1145 (6th Cir. 1985). In *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451 (1954), the Supreme Court recognized that juries in criminal cases must be free of extraneous influences, and held that such outside influences

were to be considered presumptively prejudicial to the defendant:

> "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties."

*Remmer* also set forth the requirement of a hearing to determine whether or not any outside or *ex parte* contact with jurors is prejudicial:

> "The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.*, 347 U.S. at 229-230.

While *Remmer* placed the burden on the prosecution to rebut the presumption that an extrinsic influence is prejudicial to the defense, the Supreme Court subsequently stated, in *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), "This Court has long held that the remedy for allegations of juror partiality is a hearing in which *the defendant has the opportunity to prove actual bias*." (Emphasis added). This language would appear to shift the evidentiary burden from the prosecution (as stated in *Remmer*) to the defense, and indeed, in *United States v. Pennell*, 737 F.2d 521, 532-33 (6th Cir. 1984), the Sixth Circuit construed *Phillips* as eliminating the presumption of prejudice and placing the burden of showing prejudice on the defendant. *See also United States v. Zelinka,* 862 F.2d 92, 95 (6th Cir. 1988) (" *Remmer* does not govern the question of the burden of proof where potential jury partiality is alleged. Instead, *Remmer* only controls the question of how the district court should proceed where such allegations are made") (internal citations omitted);

*United States v. Orlando* 281 F.3d 586, 598 (6th Cir. 2002).

However, regardless of where the burden lies, a hearing must be held. *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999) ("Where a colorable claim of extraneous influence has been raised, however, a *Remmer* hearing must be held to afford the defendant an opportunity to establish actual bias" (internal quotation marks omitted)); *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998).

In the present case, following the revelation of the unusual lunchtime encounter between the jurors and a mysterious man who claimed "mistaken identity" in addressing one of the jurors as "Rick Santos," the judge did precisely what *Remmer*, *Davis* and *Herndon* require. She carefully voir dired each juror individually as to what happened, and ascertained that the incident would not affect the impartiality and open-mindedness of the jurors. She also addressed the jurors collectively, again making the determination that no member of the jury was tainted as a result of the incident. Further, she instructed the jury that neither party had any hand in setting up this incident, and that the jurors were to put it out of their minds and decide the case based on the evidence presented in court.

Thus, following the *Remmer* hearing, the judge did not err in denying Petitioner's motion for mistrial, because he had not met his burden of showing prejudice stemming from this extraneous event. *United States v. Pennell, supra*.

## V. CONCLUSION

The Petitioner has not shown that the state courts unreasonably applied Supreme Court precedent as to any of the issues raised. I therefore recommend that his Petition for

Writ of Habeas Corpus be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 31, 2007.

                     S/Gina Wilson
                     Judicial Assistant